IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| LAURENCE STEWART,<br><br>             Plaintiff,<br><br>      vs.<br><br>WARDEN LEROY KIRKEGARD, et al.,<br><br>             Defendants. | CV 15-00084-H-DLC-JTJ<br><br><br>ORDER AND FINDINGS AND<br>RECOMMENDATIONS OF UNITED<br>STATES MAGISTRATE JUDGE |

Plaintiff Laurence Stewart filed a Complaint pursuant to 42 U.S.C. § 1983 alleging various violations of his constitutional rights during his incarceration at Montana State Prison ("MSP"). (Doc. 2.) After conducting an initial screening of the Complaint pursuant to 28 U.S.C. §§ 1915, 1915A, the Court determined that as pleaded, the Complaint failed to state a claim upon which relief may be granted and was subject to dismissal. Mr. Stewart was given an opportunity to file an amended complaint because it may have been possible to cure the deficiencies in the original complaint with the allegation of additional facts. (Doc. 7.)

Mr. Stewart filed an Amended Complaint on April 11, 2016. (Doc. 11.) Pursuant to the screening mandated by 28 U.S.C. §§ 1915, 1915A, the Court finds that with the exception of Mr. Stewart's retaliation claim against Lt. Jovanovich, his allegations fail to state a claim upon which relief can be granted and should be

dismissed.  The Court will require Lt. Jovanovich to respond to Mr. Stewart's

allegation that he was fired for filing grievances as alleged in Count VI of the

Amended Complaint.  All other Defendants should be dismissed.

## I.   PARTIES

Mr. Stewart is a prisoner proceeding without counsel.  He is currently

incarcerated at MSP.

In the Amended Complaint, Mr. Stewart named the following Defendants:

Leroy Kirkegard, Mike Batista, Loraine Wodnik, Paul Szczpasiak, Colleen

Ambrose, Connie Wimer, Cathy Redfern,  Myron Beeson, Associate Warden

Wood, Cindy Hiner, Jami Eads, Sam Jovanovich, Sgt. Wohlman, Captain Wigert,

Crystal Foster, Sgt. Postma, Unit Manager Kremer, Tom Tutty, Dr. Pirinian, Lt.

Harmon, Kristy Cobban, Billie Reich, and John Does 1-12.  (Doc. 11 at 2, 5-7.)

Defendants Patrick Sheehan, Ronald McDonald, Lt. Foster, Leonard

Mihelich, and Thomas Wilson were named in the original Complaint but not in the

Amended Complaint.  The Court previously advised Mr. Stewart that once he filed

an amended complaint, it replaced the original complaint and the original

complaint would no longer serve a function in the case.  *Ferdik v. Bonzelet*, 963

F.2d 1258, 1262 (9th Cir. 1992).  By not naming Defendants Patrick Sheehan,

Ronald McDonald, Lt. Foster, Leonard Mihelich, and Thomas Wilson in his

Amended Complaint, Mr. Stewart consented to the dismissal of these defendants. They should be dismissed.

## II.    SCREENING PURSUANT TO 28 U.S.C. §§ 1915, 1915A

The Court will continue the screening process mandated by 28 U.S.C. §§ 1915, 1915A and review Mr. Stewart's Amended Complaint and dismiss it, or portions there of, before it is served upon the defendants if it finds that the complaint is "frivolous," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune." *Id.*

### A.    Count I–Denial of Mental Health Care

#### 1.    Allegations

Mr. Stewart alleges he entered MSP on June 26, 2013, and began sending "kites" (inmate requests/grievances) regarding his mental health in November or December 2013.  In December or January he was screened by mental health employee Lisa who recommended that Mr. Stewart see a psychiatrist.  Mr. Stewart saw the psychiatrist some weeks later and was told he was fine and simply needed to adjust to prison.  He alleges that mental health employees and the psychiatrist were aware he was struggling with depression and suicidal thoughts and actions. (Doc. 11 at 9.)

In January 2014, Mr. Stewart sent a medical request to the psychiatrist

stating he was worried he was going to "freak out."  The psychiatrist responded
that he didn't "treat preemptive freak outs."  *(Id.* at 10*.)*

Mr. Stewart alleges that on February 3, 2014, officers received an
anonymous kite stating that an inmate in Mr. Stewart's cell was threatening to
commit suicide.  Officers searched Mr. Stewart's cell and wrote him up for having
a stock pile of aspirin and Tylenol.  (*Id.*)

Around this same period of time, mental health tech Weist explained to Mr.
Stewart that he would not receive mental health care unless he admitted he was
suicidal or homicidal.  Mr. Stewart claims that if he made such an admission he
would have been moved to an isolation cell for 72 hours.  Mr. Stewart told mental
health staff that he would never make any such admission due to his fear of being
placed in an isolation cell.  (*Id.*)

In September 2014, Mr. Stewart began cutting himself but prison staff did
not notice his wounds, even though he made no effort to cover them up.  On
January 18, 2015, officers passed out razors and Mr. Stewart cut himself so badly
that he lost consciousness.  Mr. Stewart regained consciousness after 20-40
minutes and returned to his cell only to discover that the guards had already
collected the other inmates' razors.  Prison staff did not realize that Mr. Stewart
was missing and did not collect his razor.  *(Id.* at 11*.)*

4

Mr. Stewart cut himself again on January 22, 2015, lost consciousness, was located by prison staff, and sent to the infirmary.  Mental health staff saw Mr. Stewart on January 23, 2015, and referred him to a psychiatrist.  Mr. Stewart was transferred to an isolation cell and placed on suicide watch until January 25, 2015. He sent a request to mental health on January 25, 2015.  A few days later he was seen by Mental Health Tech Weist who told him he would be put on a list to see a psychiatrist, but it would take awhile since MSP did not have a full time psychiatrist.  (*Id.* at 12-13.)

Sometime between January 26, 2015, and January 29, 2015, Mr. Stewart was called to Unit Manager Sam Jovanovich's office and they discussed Mr. Stewart's mental health status.  Mr. Stewart and Lt. Jovanovich agreed that wellness checks every two weeks could be helpful for Mr. Stewart.  (*Id.* at 13.)

Mr. Stewart sent a request to mental health regarding seeing a psychiatrist on February 18, 2015.  On February 23, 2015, he was seen by a psychiatrist who prescribed individual therapy.  (*Id.* at 13.)

Mr. Stewart saw a mental health employee for a wellness check on March 4, 2015.  Although he was told he would have wellness checks every two weeks, his only other wellness check was on May 31, 2015.  (*Id.*)

On May 9, 2015, Mr. Stewart sent a three-page "kite" to Mental Health

5

Supervisor Jamie Eads.  He was seen by the psychiatrist on May 15, 2015, and prescribed Prozac.  (*Id.* at 13-14.)

With regard to specific defendants, Mr. Stewart alleges that the MSP psychiatrist (John Doe) from 2013 to 2014 knew of his suicidal thoughts and depression and refused to treat him.  He alleges the officers who did not find Mr. Stewart on January 18, 2015, should be held liable because they failed to collect his razor.  He alleges that Defendants Kirkegard, Batista, Wodnik, Eads, Wimer, and Redfern are all supervisors and are aware of systemic deficiencies at the prison but refused to investigate and fix the issues.  He also alleges there are under staffing and budgetary issues at the prison.  He alleges that Paul Szczepaniak is responsible for a lack of proper investigations contributing to the practice of condoning employees' illegal actions.  He also finds fault with the Defendant Wohlman and the John Doe officers who did not immediately find Mr. Stewart after he attempted suicide on January 22, 2015.  He alleges the John Doe mental health employees should be held liable for not performing well checks every two weeks.  (*Id.* at 15.)

### 2.    Analysis

The Eighth Amendment requires that prisoners receive adequate medical care, including mental health care.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976);

*Doty v. County of Lassen*, 37 F.3d 540, 546 (1994) (the requirements for constitutionally adequate mental health care are the same as those for physical health care needs.)  A prisoner must demonstrate "deliberate indifference to serious medical needs" in order to prevail on an Eighth Amendment medical care claim. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  There are two prongs to the deliberate indifference analysis. First, a prisoner must show a "serious medical need."  *Jett*, 439 F.3d at 1096 (citations omitted).  A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (internal citation omitted).

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent.  *Jett*, 439 F.3d at 1096.  This second prong is met if the prisoner demonstrates (1) a purposeful act or failure to respond to a prisoner's medical need and (2) harm caused by the indifference.  *Id.*  Prison officials are deliberately indifferent if they deny, delay, or intentionally interfere with medical treatment.  *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

For purposes of this Order, the Court will assume that Mr. Stewart has a serious mental health care need.  However, Mr. Stewart did not present sufficient

7

factual allegations to plausibly suggest that any named defendant was deliberately indifferent to those mental health needs.  Although, the January 2014 response regarding not treating "preemptive freak outs" seems less than helpful, Mr. Stewart went for nearly a year after that incident before he started cutting himself.  Even then, it was not until January 22, 2015, that prison staff actually became aware of his cutting propensities.  In order to engage in a purposeful act or failure to act, a defendant must first be aware of the existence of a problem.  There is no allegation that Mr. Stewart sought mental health care between January 2014 and January 22, 2015, when he was found unconscious.

Mr. Stewart received mental health treatment after his January 2015 cutting incident.  He was seen by a psychiatrist on February 23, 2015, had a wellness check on March 4, 2015, was seen again by a psychiatrist on May 15, 2015, had another wellness check on May 31, 2015, and he was transferred from MSP on June 9, 2015.  According to Mr. Stewart's allegations, he was seen by mental health each time he submitted a mental health request.  These allegations are insufficient to plausibly state a claim for denial of mental healthcare.  Mr. Stewart's claims for denial of mental health care as alleged in Count I should be dismissed.

8

**B.     Count II–Denial of Medical Care for Cutting Wounds**

**1.     Allegations**

In Count II, Mr. Stewart alleges he was sent to the infirmary on January 22, 2015, for treatment of his cutting wounds.  He alleges medical personnel only glued his cutting injuries back together and did not give him stitches.  When he was transferred from medical and taken to Locked Housing Unit I (LHU-1) isolation, his wounds broke open, got inflamed, and were itchy, painful, and oozing pus.  When he returned to the High Side Unit I (HSU-I) on the evening of January 25, 2015, he filled out a medical kite.  On January 27 or January 28, 2015, his kite was returned with the notation that he had refused treatment because he did not appear when called out for medical.  (Doc. 11 at 17-18.)

Mr. Stewart complains that Defendants did not properly treat him on January 22, 2015, when they sealed his wounds with glue instead of giving him stitches and that they should have taken him to the hospital.  He also faults Defendants for not making sure he heard the officers when he was called to medical for treatment of serious medical needs and for not following up on his wounds automatically.  (*Id.*)

**2.     Analysis**

Mr. Stewart has not set forth sufficient facts to establish a claim for denial of medical care.  "A difference of opinion between a physician and the prisoner - or

between medical professionals–concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (*citing Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), *overruled in part on other grounds, Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (*citing Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Mr. Stewart "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (*citing Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

Mr. Stewart has not alleged that anyone acted in conscious disregard to an excessive risk to his health. He was treated for his self-inflicted wounds. He may disagree with the type of treatment he received but sealing an injury with glue as opposed to stitches does not rise to the level of a constitutional violation.

Further, after Mr. Stewart was advised on January 27 or January 28, 2015, that he had missed the medical call, there is no indication that he again attempted to submit a medical request or that he even needed to at that point, especially considering that his wounds had scabbed over and did not require treatment by February 10, 2015. These allegations are insufficient to state a claim for denial of

10

medical care and should be dismissed.

**C.    Count III–Handcuffs too Tight–Excessive Force**

**1.    Allegations**

In Count III, Mr. Stewart alleges two Inner Prison Security (IPS) officers

handcuffed him too tightly when they moved him from the infirmary to LHU-1 on

January 23, 2015.  He alleges he was not issued a write-up or notice of an

investigation and he was not aggressive, violent, or non-compliant.  Nevertheless,

the officers put full restraints on him tightly.  He told the officers the restraints

were really tight to which the officers responded that they were not going far.  Mr.

Stewart alleges he grunted and groaned all the way to LHU-1 because the restraints

were digging into him.  He alleges that he was in these restraints for approximately

five minutes and the handcuffs were tight enough to cause serious injury in that

short time. (Doc. 11 at 21.)  Upon arrival at LHU-1, the restraints were removed

and Mr. Stewart noticed that his cutting wounds had split open and were oozing

pus and blood.  He alleges it was clear that the cuffs had caused the wounds to

open.  He claims the officers must have known about his injuries because they

were obvious.  (*Id.* at 21-22.)

With regard to the specific defendants, Mr. Stewart alleges Defendants

Kirkegard, Batista, Wodnik, Wood, Harmon, and Szczpaniak are supervisors at

11

MSP and through grievances they knew or should have known about IPS improperly applying restraints and causing Mr. Stewart injury. Mr. Stewart seeks to hold these Defendants liable because they did nothing to investigate this incident. (*Id.* at 23.)

### 2.   Analysis

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (*citing Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7.

Mr. Stewart's allegations that he told the officers the handcuffs were too tight, groaned all the way to LHU-1, and that his wounds were oozing pus and blood when the handcuffs were removed may be sufficient to state a claim for excessive force but Mr. Stewart has not identified these officers by name.

12

The use of Doe defendants in federal court is problematic and ultimately unnecessary. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  The Federal Rules of Civil Procedure prescribe the process which a plaintiff must follow if he wishes to add subsequently identified individuals as defendants.  If Mr. Stewart is able to learn the identities of the officers at issue, he must promptly move pursuant to Rule 15 of the Federal Rules of Civil Procedure to file a second amended complaint to add the identified parties as defendants.  *See Brass v. County of Los Angeles*, 328 F.3d 1192, 1197‒98 (9th Cir. 2003).  If the timing of his amendment raises questions as to the statute of limitations, Mr. Stewart must satisfy the requirements of Rule 15(c), which is the controlling procedure for adding defendants whose identities were discovered after the commencement of the action.  Additionally, unknown persons cannot be served with process until they are identified by their real names, and the Court will not investigate the names and identities of unnamed defendants.

Since Mr. Stewart has not identified the two ISP officers by name, the Court recommends that these defendants be dismissed without prejudice.  Mr. Stewart may file a motion to amend his complaint and request service of these defendants if he later identifies them pursuant to Rule 15 of the Federal Rules of Civil Procedure.

Mr. Stewart has also named a number of supervisory officials at MSP with regard to this claim. "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). That is, to impose liability under section 1983 against a supervisor, a plaintiff must establish the supervisor's <u>prior</u> knowledge of unconstitutional conditions or unconstitutional conduct committed by subordinates that would give the supervisor notice of the need for changes. *Howell v. Earl*, 2014 WL 2594235 (D.Mont. 2014) (*citing Starr*, 652 F.3d at 1208; *Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir. 2011)); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991), *Watkins v. City of Oakland*, 145 F.3d 1087, 1093–94 (9th Cir.1997), and *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007).

Here, Mr. Stewart only faults the supervisory defendants for not properly investigating this isolated incident of alleged excessive force. This is insufficient to state a claim against supervisory officials. Mr. Stewart has made no allegation that any of the named supervisors had prior knowledge of unconstitutional conditions or conduct such that they should have been on notice of the need for

14

changes.  As such, the claims against the supervisory defendants in this claim
should be dismissed with prejudice.

### D.    Count IV–Placement in Isolation on Suicide Watch

#### 1.    Allegations

Count IV of the Complaint alleges that Mr. Stewart was placed in an LHU-1
isolation cell on suicide watch from January 23, 2015, until January 25, 2015.  He
alleges the cell was dirty, he was not offered a shower, and the mattress irritated his
skin.  He claims that he had fresh wounds from the January 22, 2015 incident that
were reopened when IPS took him to the isolation cell.  He alleges that prison staff
did not notice his wounds or that he did not eat or drink while in isolation even
though he was on 24-hour surveillance.  (Doc. 11 at 25.)

With regard to the individual Defendants, Mr. Stewart alleges Staff Sgt.
Postma was working on January 23, 2015, and should have ensured that Mr.
Stewart's cell was cleaned properly before placing Mr. Stewart inside.  He alleges
John Doe #10 was the sergeant in charge from January 24-25, 2015, and did not
give Mr. Stewart a shower or any other way to clean himself.  He also alleges Unit
Manager Kremer did not properly investigate or punish the staff that violated law
and policy.  (*Id.* at 26.)

#### 2.    Analysis

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).  "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993) (citations omitted).  "The [Eighth] Amendment also imposes duties on [prison] officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety." *Farmer*, 511 U.S. at 832. A prison official violates the Eighth Amendment when (1) the deprivation alleged is "objectively, sufficiently serious" and (2) the "prison official possesses a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (*citing Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)).

When determining whether the deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation.  "The more basic the need, the shorter the time it can be withheld." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation omitted).

Mr. Stewart's claims regarding Defendants placing him in an isolation cell when he was suicidal are foreclosed by the case of *Anderson v. County of Kern*, 45

16

F.3d 1310 (9th Cir. 1995).  In *Anderson*, the Ninth Circuit upheld the use of "safety cells" (a padded cell with a pit toilet) to house mentally disturbed or suicidal prisoners for short periods of time.  *Anderson*, 45 F.3d at 1314.

Mr. Stewart also alleges that the cell was dirty but provides no specific facts which suggest that the conditions were unsanitary.  At most, Mr. Stewart was held in the cell for 48 hours and there is no factual allegation to suggest that the temporary imposition of the conditions of confinement constituted an "infliction of pain" in violation of the first part of the *Farmer* test.  Further, Mr. Stewart admitted in his original complaint that he was provided food during this period of time, and therefore, there is no constitutional violation simply because he chose not to eat.  Because of the short duration of time that Mr. Stewart was in this cell (two days), he would need to establish a significant violation which he has not done.  These claims should be dismissed.

### E.    Count V–Deprived of Property for One Week

#### 1.    Allegations

Mr. Stewart alleges that when he was placed in the isolation/suicide watch cell on January 22, 2015, his property was collected by Officers Ward and Prescott and sent to the property office for storage.  He returned to population on January 25, 2015, but did not receive his property back until February 2, 2015.  (Doc. 11 at

17

28.)

### 2.     Analysis

In *Sandin v. Conner*, 515 U.S. 472, 477–84 (1995), the Supreme Court held that a prisoner is entitled to procedural due process only if the restraint on his liberty of which he complains imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.  The Court finds that the short term deprivation of Mr. Stewart's personal property does not demonstrate an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" and is therefore insufficient to state a due process claim.  *Id.*

This claim should be dismissed.

### F.     Count VI–Retaliation–Lost Job

### 1.     Allegations

Mr. Stewart was hired to work in the prison laundry on March 11, 2015.  Mr. Stewart filed more than 20 grievances between January and April 2015 and filed seven informal grievances between April 11, 2015, and April 18, 2015.  He claims these grievances raised legitimate concerns.  One issue raised in these grievances was about clothing shortages at the laundry, which had been occurring since before Mr. Stewart was hired.  On or about April 18, 2015, Mr. Stewart put a stack of ten

informal grievance forms in the dayroom and told everyone to file a grievance if they wanted new clothes.  Approximately six people submitted grievances.  (Amd. Cmplt., Doc. 11 at 31.)

On April 20, 2015, Mr. Stewart and his co-worker were confronted by Lt. Jovanovich about the clothing shortage.  Lt. Jovanovich stated that he would order more clothes and told them that if they had an issue they should file an OSR (offender staff request) and not grievances because grievances required more work to process. (*Id.* at 31-32.)

On April 22, 2015, Mr. Stewart and his co-worker were fired and told that it was because they gave out clothes when they were not supposed to.  On April 22, 2015, Mr. Stewart received a response to an informal grievance on the clothing shortage issue.  In that response, Lt. Jovanovich stated, "you as the laundry workers are not to be giving out overly large clothing–if you cannot follow the rules we need to fix that."  (*Id.* at 32.)

With regard to the specific defendants, Mr. Stewart alleges that Lt. Jovanovich fired him in retaliation for submitting grievances.  He alleges Defendants Kirkegard, Wodnik, Batista, Beeson, Szczpaniak, and Cobban were supervisors and were aware of this retaliation and did nothing to investigate Mr. Stewart's grievances.  (*Id.* at 35.)

19

2.      **Analysis**

In order to state a claim under 42 U.S.C. § 1983 for retaliation, a prisoner

must establish that he was retaliated against for exercising a constitutional right,

and that the retaliatory action was not related to a legitimate penological purpose,

such as preserving institutional security.  *Barnett v. Centoni*, 31 F.3d 813, 815-16

(9th Cir. 1994) (per curiam).  In meeting this standard, the prisoner must

demonstrate a specific link between the alleged retaliation and the exercise of a

constitutional right.  *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995);

*Valandingham v. Bojorquez*,866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner

must also show that the exercise of First Amendment rights was chilled, though not

necessarily silenced, by the alleged retaliatory conduct.  *Resnick v. Hayes*, 213 F.3d

443, 449 (9th Cir. 2000), *Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005).

Thus, a prisoner must establish the following in order to state a claim for

retaliation: (1) prison officials took adverse action against the inmate; (2) the

adverse action was taken because the inmate engaged in protected conduct; (3) the

adverse action chilled the inmate's First Amendment rights; and (4) the adverse

action did not serve a legitimate penological purpose.  *Rhodes*, 408 F.3d at 568.

Mr. Stewart's allegation that Lt. Jovanovich fired him for submitting

grievances and telling others to do so is sufficient to state a claim for retaliation.

20

Lt. Jovanovich will be required to respond to this claim.

Mr. Stewart failed to state sufficient facts to bring a supervisory claim against Defendants Kirkegard, Wodnik, Batista, Beeson, Szczpaniak or Cobban. Mr. Stewart made no allegation that any of the named supervisors had prior knowledge of unconstitutional conditions or conduct such that they should have been on notice of the need for changes.

In addition, inmates do not have a constitutional entitlement to a specific prison grievance procedure. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (*citing Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)).  Therefore, a prisoner cannot state a cognizable civil rights claim for a violation of his due process rights based on allegations that prison officials ignored or failed to properly process grievances.  As such, the claims against the supervisory defendants in this claim should be dismissed with prejudice.

### G.   Count VII–Access to Policies, Staff Names, Investigations

#### 1.   Allegations

Mr. Stewart alleges multiple violations of his Fourteenth Amendment due process rights and his substantive right to know because investigations were not performed at the prison.  He alleges he was never interviewed or asked for paperwork, inmates named as witnesses were not interviewed, he was not given

access to information about the outcome of any investigations, no criminal charges were filed against any staff, he was not given the names of officers he accused of misconduct, there is no general information of DOC/MSP hierarchy made available to inmates, and there is no list of names of employees available to inmates.  (Doc. 11 at 37.)

### 2.    Analysis

None of these issues demonstrate an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" and is therefore insufficient to state a due process claim.  *Sandin*, 515 U.S. at 484.  Further, even if the Defendants violated a prison policy, that by itself, is insufficient to support a claim under section 1983.  *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009); *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997).

These allegations are insufficient to state a claim for relief and should be dismissed.

### H.    Count VIII–Grievance Restriction

### 1.    Allegations

In Count VIII, Mr. Stewart alleges that he was placed on a grievance restriction on May 27, 2015, for using "derogatory and abusive language in regards to staff" and filing grievances in retaliation against staff.  (Doc. 11 at 40.)  He

22

alleges he was transferred to Crossroads Correctional Center in retaliation for filing grievances and that he reclassification was done improperly to make him eligible to be transferred.  (*Id.* at 41.)

With regard to the specific defendants, Mr. Stewart alleges Defendants Batista, Wodnik, and Ambrose are supervisors responsible for allowing an illegal policy and for allowing staff to abuse the policy because it is so vague.  He alleges Warden Kirkegard put Mr. Stewart on the grievance restriction in retaliation for filing grievances.  He contends Lt. Jovanovich performed his reclassification improperly.  He alleges Defendants Cobban and Reich falsely accused him of misconduct so that he would be put on a grievance restriction.  (*Id.*)

### 2.    Analysis

Although inmates have a First Amendment constitutional right of access to such grievance procedures as a prison affords, *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) , they do not have a due process right in the processing of their inmate appeals.  *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to specific grievance procedure; claim that prison officials interfered with appeal thus did not state due process violation); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); *Mann v.*

*Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (no entitlement to grievance procedure).
Therefore, Mr. Stewart's allegations that his grievances were improperly denied do
not state a claim for relief.

Prisoners do, however, retain a First Amendment right to petition the
government through the prison grievance process. *Bradley v. Hall*, 64 F.3d 1276,
1279 (9th Cir. 1995).  Therefore, interference with the grievance process may, in
certain circumstances, implicate the First Amendment.  Such a claim would have to
be based on the theory that interference with the grievance process resulted in a
denial of the inmate's right to access to the courts.  This right includes petitioning
the government through the prison grievance process.  *See Lewis v. Casey*, 518
U.S. 343, 346 (1996); *Bounds v. Smith*, 430 F.3d 817, 821 (1977); *Bradley,* 64 F.3d
at 1279 (discussing the right in the context of prison grievance procedures).  The
right of access to the courts, however, only requires that prisoners have the
capability of bringing challenges to sentences or conditions of confinement.  *See
Lewis*, 518 U.S. at 356–57.  Moreover, the right is limited to non-frivolous
criminal appeals, habeas corpus actions, and § 1983 suits. *See id.* at 353 n. 3 &
354–55.  Therefore, the right of access to the courts is only a right to present these
kinds of claims to the court, and not a right to discover claims or to litigate them
effectively once filed.  *See id.* at 354–55.

24

As a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. *See id.* at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. *See id.*; *see also Phillips v. Hust*, 477 F.3d 1070, 1075 (9th Cir. 2007).

Mr. Stewart alleges Defendants interfered with his ability to present grievances but he still has not alleged that such interference resulted in any actual injury with respect to contemplated or ongoing habeas or civil rights litigation. To state a claim, the interference complained of would have had to result in Mr. Stewart being unable to present or pursue a habeas or civil rights claim. He has not indicated any such inability. Thus, he has failed to state a claim. This claim should be dismissed.

Mr. Stewart then alleges that on or about June 8, 2016, he was transferred to Crossroads Correctional Center in retaliation for using the grievance system. (Doc. 11 at 42.) He only makes this conclusory statement and speculates that Warden Kirkegard was "likely involved" in shipping him to a different facility. He has not provided sufficient facts to plausibly suggest that his transfer was done as a result of his exercise of his constitutional rights. This claim should also be dismissed.

## III.   CONCLUSION

The Court has considered whether Mr. Stewart's claims are frivolous, malicious, fails to state a claim, or seeks solely monetary relief from a defendant who is immune.  *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).  It has also considered whether Mr. Stewart has a reasonable opportunity to prevail on the merits.  *See* 42 U.S.C. § 1997e(g).  Dismissal of Mr. Stewart's retaliation claim against Defendant Jovanovich as alleged in Count VI is not appropriate at this time.  *See* 42 U.S.C. § 1997e(g)(2) (while Defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that plaintiff has a "reasonable opportunity to prevail on the merits," Defendant is required to respond).  Defendant Jovanovich will be required to respond to Mr. Stewart's retaliation claim raised in Count VI of the Amended Complaint.

For the reasons set forth herein, the remaining counts fail to state a claim for which relief may be granted and should be dismissed.  In addition, all Defendants other than Lt. Jovanovich should be dismissed.

Based on the foregoing, the Court issues the following:

## ORDER

26

1.  Pursuant to Fed.R.Civ.P. 4(d), the Court requests Defendant Jovanovich to waive service of summons by executing, or having counsel execute, the Waiver of Service of Summons.  The Waiver must be returned to the Court within **thirty (30) days of the entry date reflected on the Notice of Electronic Filing**.  If Defendant Jovanovich chooses to return the Waiver of Service of Summons, his answer or an appropriate motion will be due within 60 days after the entry date reflected on the Notice of Electronic Filing for this Order under Fed.R.Civ.P. 12(a)(1)(B).  *See* 42 U.S.C. § 1997e(g)(2) (while Defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that plaintiff has a "reasonable opportunity to prevail on the merits," Defendant is required to respond).

2.  The Clerk of Court shall e-mail the following documents to Legal Counsel for the Montana Department of Corrections:

   *    Complaint (Doc. 2);

   *    Order dated March 8, 2016 (Doc. 7);

   *    Amended Complaint (Doc. 11);

27

\*      this Order;

\*      a Notice of Lawsuit & Request to Waive Service of Summons; and

\*      a Waiver of Service of Summons.

Counsel for the Montana Department of Corrections will not be served with a hard copy of these documents.

3.  Any party's request that the Court grant relief, make a ruling, or take an action of any kind must be made in the form of a motion, with an appropriate caption designating the name of the motion, served on all parties to the litigation, pursuant to Federal Rules of Civil Procedure 7, 10, and 11.  If a party wishes to give the Court information, such information must be presented in the form of a notice.  The Court will not consider requests made or information presented in letter form.

4.  Mr. Stewart <u>shall not</u> make any motion for default until at least seventy (40) days after the date of this Order.

5.  **Unless Defendants object within seven (7) days of the date of this Order**, Mr. Stewart does not need to serve Defendants' counsel the materials he files with this Court because Defendants' counsel will be served via the electronic filing system.  Mr. Stewart will, however, be required to serve all discovery requests and other documents not filed with the Court upon counsel by first-class

mail.  Defendants must, however, serve on Mr. Stewart a complete copy of everything it submits to the Court.

6.  At all times during the pendency of this action, Mr. Stewart must immediately advise the Court and opposing counsel of any change of address and its effective date.  Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Further, the Court issues the following:

## RECOMMENDATIONS

1.  Defendants Leroy Kirkegard, Mike Batista, Loraine Wodnik, Paul Szczpaniak, Colleen Ambrose, Connie Wimer, Cathy Redfern,  Myron Beeson, Associate Warden Wood, Cindy Hiner, Jami Eads, Sgt. Wohlman, Captain Wigert, Crystal Foster, Sgt. Postma, Unit Manager Kremer, Tom Tutty, Dr. Pirinian, Lt. Harmon, Kristy Cobban, Billie Reich, Patrick Sheehan, Ronald McDonald, Lt. Foster, Leonard Mihelich, Thomas Wilson, John Does 1-7, and John Does 10-12 should be DISMISSED WITH PREJUDICE.

2.  Defendants John Doe 8 and John Doe 9 (the two IPS Officers who transferred Mr. Stewart from the infirmary to LHU-1 on January 23, 2015) and the allegations against these Defendants set forth in Count III should be DISMISSED WITHOUT PREJUDICE.

3.  All claims raised in Counts I, II, IV, V, VII, and VIII should be DISMISSED WITH PREJUDICE.

4.  All claims raised in Count III against Defendants Kirkegard, Batista, Wodnik, Wood, Harmon, and Szcapaniak should be DISMISSED WITH PREJUDICE.

5.  All claims raised in Count VI against Defendants Kirkegard, Wodnik, Batista, Beeson, Szczpaniak, and Cobban should be DISMISSED WITH PREJUDICE.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Stewart may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

---

[1]As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d).  Therefore, three (3) days are added after the period would otherwise expire.

DATED this 12th day of December 2016.


                         */s/ John Johnston*          
                         John Johnston
                         United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| LAURENCE STEWART, | CV 15-00084-H-DLC-JTJ |
| Plaintiff, | |
| vs. | Rule 4 Notice of a Lawsuit and Request to Waive Service of Summons |
| WARDEN LEROY KIRKEGARD, et al., | |
| Defendants. | |

To:   Legal Counsel for the Montana Department of Corrections
       P.O. Box 201301
       Helena, MT 59620-1301

A lawsuit has been filed, against an individual you may represent, in this Court under the number shown above.  A copy of the amended complaint is attached.

This is not a summons, or an official notice from the court.  It is a request that, to avoid the cost of service by the U.S. Marshal's Service, you waive formal service of a summons by signing and returning the enclosed waiver.  To avoid these expenses, you must file the signed waiver within 30 days from the date shown below, which is the date this notice was sent.

If you file the signed waiver, the action will then proceed as if Defendant was served on the date the waiver is filed, but no summons will be served on

1

Defendant and Defendant will have 60 days from the date this notice is sent (see

the date below) to answer the amended complaint.

If you do not return the signed waiver within the time indicated, the Court

will order the U.S. Marshals Service to serve the summons and amended complaint

on Defendant and may impose the full costs of such service.

Please read the statement below about the duty to avoid unnecessary

expenses.

DATED this 12th day of December 2016.

 /s/ John Johnston
John Johnston
United States Magistrate Judge

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to
cooperate in saving unnecessary expenses of serving a summons and complaint.  A
defendant who is located in the United States and who fails to return a signed
waiver of service requested by a plaintiff located in the United States will be
required to pay the expenses of service, unless the defendant shows good cause for
the failure.

"Good cause" does not include a belief that the lawsuit is groundless, or that
it has been brought in an improper venue, or that the court has no jurisdiction over
this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other
defenses and objections, but you cannot object to the absence of a summons or of
service.

If you waive service, then you must, within the time specified on the waiver
form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy
with the court.  By signing and returning the waiver form, you are allowed more
time to respond than if a summons had been served.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| LAURENCE STEWART, | CV 15-00084-H-DLC-JTJ |
| Plaintiff, | |
| vs. | Rule 4 Waiver of the Service of Summons |
| WARDEN LEROY KIRKEGARD, et al., | |
| Defendants. | |

TO:   The U.S. District Court for the District of Montana

The following Defendant acknowledges receipt of your request to waive service of summons in this case.  Defendant also received a copy of the amended complaint.  I am authorized by the following Defendant to agree to save the cost of service of a summons and an additional copy of the amended complaint in this action by not requiring that the following individual be served with judicial process in the case provided by Fed.R.Civ.P. 4:

_____;  _____;

The above-named Defendant understands that he will keep all defenses or objections to the lawsuit, the Court's jurisdiction, and the venue of the action, but waive any objections to the absence of a summons or of service.

Defendant also understands that he must file and serve an answer or a

1

motion under Rule 12 within 60 days from the date when the Request for Waiver of Service of Summons was filed and if they fail to so default judgment will be entered against them.

Date: _____

_____
(Signature of the attorney
or unrepresented party)


_____
(Printed name)


_____
(Address)


_____
(E-mail address)


_____
(Telephone number)

2