

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| LAURENCE STEWART,<br><br>Plaintiff,<br><br>vs.<br><br>SAM JOVANOVICH,<br><br>Defendant. | CR 15–84–H–DLC–JTJ<br><br>ORDER |

Before the Court is Defendant Sam Jovanovich's ("Jovanovich") Motion for Summary Judgment (Doc. 74), and Plaintiff Laurence Stewart's ("Stewart") Cross-Motion for Summary Judgment (Doc. 87). Additionally, Stewart has filed a Motion for a Protective Order or Injunctive Relief (Doc. 91). On May 9, 2018 United States Magistrate Judge John T. Johnston entered his Findings and Recommendations, recommending that both motions for summary judgment be denied upon finding several disputes of material fact. (Doc. 92.) Additionally, on July 11, 2018 Judge Johnston recommended that Stewart's Motion for a Protective Order be denied. (Doc. 96.) Because Jovanovich timely objects, the Court will review de novo those findings and recommendations to which he

-1-

specifically objects. 28 U.S.C. § 636(b)(1)(C). The Court reviews for clear error those findings and recommendations to which no party objects. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

For the reasons explained below, the Court adopts in full Judge Johnston's recommendation to deny both motions for summary judgment and deny the request for a preliminary injunction. Because the parties are familiar with the facts and procedural background of the case it will only be restated as necessary to understand the Court's order.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986) (internal quotation marks omitted). The movant's burden is satisfied when the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation marks omitted).

## DISCUSSION

### I. Summary Judgment

Judge Johnston recommended denying both motions for summary judgment, upon finding several disputes of material fact in reference to Stewart's First Amendment retaliation claim. A First Amendment claim for retaliation in the prison context requires a plaintiff to prove each of the following five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Judge Johnston denied summary judgment, finding that there was a dispute

as to whether: (1) Jovanovich was responsible for terminating Stewart; (2) Stewart was removed from his position because of his engagement in protected activity; and (3) Stewart was removed from his post absent a legitimate penological reason. (Doc. 92 at 16–17.) Lastly, Judge Johnston recommended that qualified immunity did not apply. (*Id.* at 20.)

In response, Jovanovich raises four objections. He first argues that Judge Johnston erred in determining that "Stewart's alleged encouraging other inmates to file grievances regarding laundry issues bears on [his] retaliation claim." (Doc. 94 at 3.) Relatedly, he argues that absent this fact, only timing remains to support an inference of retaliatory intent. (*Id.*) Penultimately, Jovanovich argues that Stewart cannot preclude summary judgment by making bare, conclusory statements that he was terminated absent a legitimate penological reason. (*Id.*) Finally, he argues that Judge Johnston improperly denied qualified immunity. (*Id.*)

## A. Retaliation

Jovanovich argues that Judge Johnston erred when he determined that the six grievances filed by other inmates at Stewart's behest had any bearing on Stewart's retaliation claim. The Court disagrees.

After Stewart was hired in the prison's laundry room, he filed numerous

grievances alerting prison staff to a clothing shortage, particularly in the larger

garment sizes. (Doc. 88-1 at 15–23.) Though this issue predated Stewart's

tenure in the laundry room, Stewart used his position of authority to identify and

recommend that the prison stock certain items. (Doc. 76-4 at 1.) Despite his

efforts, Stewart was unable to make headway on the issue, and because a number

of inmates were similarly concerned, Stewart placed a stack of informal grievance

forms in the dayroom and recommended that those who were unhappy could

submit grievances on their own behalf. (Doc. 11 at 31.) Approximately six

inmates took the suggestion and filed informal grievances. (Doc. 88-1 at 25–28.)

It is not entirely clear why Jovanovich believes that Stewart's encouraging

others to file grievances so that a shared issue could be brought to the forefront of

the prison's administration is irrelevant to his retaliation claim. Jovanovich cites

the general principal that "[i]nmates do not have a constitutional right to a specific

grievance procedure" and observes that the prison's internal procedures specify

that "an inmate may not submit a grievance form on behalf of another inmate."

(Doc. 94 at 4–5 (citing *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) and

MSP Procedure 3.3.3.) While correct, these observations obfuscate the

significance of Stewart's claim.

At first blush, *Ramirez* stands for an irrelevant proposition to the case at

hand. *Ramirez* involves an inmates' due process and equal protection claim for procedures utilized in a prison disciplinary hearing. *Id.* at 852. However, this principle quoted by Jovanovich is similarly recited to resolve an issue in an arguably related unpublished decision. *See Lee v. Chavez*, 12 F.3d 1107, *1–2 (9th Cir. 1993) (unpublished). In *Lee*, an inmate claimed that prison officials violated his First Amendment rights by failing to accept a group grievance because the prison's internal policy prohibited joint petitions. *Id.* at *1. The panel determined that there was no constitutional right to a certain grievance procedure and therefore an inmate did not state a colorable First Amendment claim based solely on the fact that the prison refused to consider a group grievance. *Id.*

However, *Lee* and its legal principle cited by Jovanovich sheds little light on the issue here. Stewart is not claiming that the six grievances submitted by others were a proxy for his own concerns, nor is he claiming that these grievances were denied because they took an improper form, or that the prison lacks a protocol for group speech. Rather, Stewart claims his First Amendment rights were chilled when he was terminated for bringing a laundry issue to the prison's attention. That he encouraged others to do the same and was removed from a position of influence when others voiced similar concerns speaks directly to the issue of whether he was fired because he was advocating for additional garments.

Because the issue of retaliation is fundamentally different than the issue of who and how a prisoner may construct a grievance, Judge Johnston did not err in concluding that the six additional grievances were relevant to Stewart's claim.

Next, Jovanovich argues that it was error for Judge Johnston to find "inference of retaliatory intent based solely on the timing of [] Stewart and the other prisoners' grievances regarding laundry issues, the timing of [] Jovanovich's alleged statement regarding the amount of work it took to process grievances, and the timing of [] Jovanovich's responses to the laundry grievances." (Doc. 94 at 5 (quoting Doc. 92 at 17).) This argument is largely premised upon the Court's finding that the six other inmate grievances are irrelevant to Stewart's retaliation claim. (Doc. 94 at 6 (arguing that "[l]eaving out the other inmates' grievances . . . the only remaining issues" pertain to timing.).) As already explained, the Court does not find the other grievances irrelevant. Regardless, even if the Court were to disregard this additional fact, the Court does not believe that Judge Johnston applied an incorrect legal standard in finding that these facts alleged more than mere timing.

The evidence presented by Stewart suggests that in early and mid-April, Stewart filed numerous grievances and an informal resolution regarding the laundry room issues. (*See* Doc. 88-1 at 15–23.) On April 20th, Jovanovich

confronted Stewart and another laundry-room employee and asked them to stop sending grievances and send informal resolutions instead, as these require less paperwork for prison officials. (Doc. 11 at 31–32.) On April 22nd, Stewart was terminated. Also on April 22nd, Jovanovich processed a series of grievances relating to the laundry issue. Some of these grievances were from other inmates and some of them were Stewart's. (Doc. 88-1 at 14–26.) Contrary to Jovanovich's assertion, these facts create the inference of retaliation beyond simple timing because they indicate a motivation for Stewart's termination: after Jovanovich asked Stewart to stop sending grievances because of their time-intensive nature, Jovanovich removed Stewart from his position after recieving a stack of additional grievances, accompanied by, presumably, the time-intensive task of having to respond to them. In essence, these facts create a possible inference that Stewart was terminated because he was becoming a trouble-maker for Jovanovich. Having reviewed this claim de novo, the Court concludes that circumstances beyond mere timing support the inference of retaliation.

Jovanovich also argues that Judge Johnston erred in finding that there was a dispute of fact as to whether Stewart was terminated in the absence of a legitimate penological reason, when Stewart was not able to provide any evidence that he never distributed extra laundry whereas Jovanovich presented evidence to the

contrary. While it is true that a party cannot prevent summary judgment by "bald assertions" or "uncorroborated self-serving statements," *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009), *S.E.C. v. Phan*, 500 F.3d 895, 910 (9th Cir. 2007), it is also true that a party cannot be expected to produce evidence of something that does not exist. To the extent that Jovanovich argues that the Court should grant summary judgment because Stewart failed to produce affirmative evidence that he never broke the laundry room policies, the Court declines to do so. Further, even the undisputed evidence cited to by Jovanovich does not clearly indicate that Stewart was responsible for distributing excess clothing. (Docs. 94 at 11.) The uncontroverted evidence suggests that some laundry room employee distributed clothing and that Stewart was uncomfortable with the one-to-one policy. (Docs. 76-10 at 2; 76 at 5.) Any inference beyond this remains a question of fact. Thus, having reviewed this objection de novo, the Court adopts Judge Johnston's recommendation that there are issues of fact requiring resolution at trial.

### B. Qualified Immunity

Judge Johnston found that Jovanovich was not protected by the doctrine of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Easley v. City of Riverside*, 890 F.3d 851, 855 (9th Cir. 2018) (quoting *Stanton v. Sims*, 571 U.S. 3, 4–5 (2013) (per curiam)). This doctrine balances two competing interests, "the need to hold public officials accountable for irresponsible actions, and the need to shield them from liability when they make reasonable mistakes." *Id.* at 856.

There are two prongs to a qualified immunity analysis, and a district court has the discretion to sequence these prongs based on the facts in front of it. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Qualified immunity applies unless the "plaintiff has alleged a deprivation of a constitutional right" and "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 129. The test is conjunctive; unless both prongs are satisfied, a government actor is shielded by qualified immunity. *See id.*

"[A]t summary judgment, an officer may be denied qualified immunity in a § 1983 action only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right; and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood his conduct to be unlawful in that situation." *Easley*, 890 F.3d at 856. Here, Judge Johnston determined "that

there is a disputed issue of fact regarding whether [] Jovanovich violated Mr. Stewart's First Amendment rights." (Doc. 92 at 20.) Judge Johnston then determined that "retaliating against a prisoner for his use of the prison grievance system violates a prisoner's constitutional rights" was a "clearly established" right in April 2015. (Doc. 92 at 20 (citing to *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009); *Rhodes*, 408 F.3d at 567; *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).)

Jovanovich raises two objections. First, he attacks Judge Johnston's finding on the "clearly defined" prong by arguing that Judge Johnston defined the right at issue in overly general terms in contravention of the Supreme Court's explicit instruction to specifically define the right. (Doc. 94 at 13 (citing *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018) (per curiam) for the proposition that courts are not to define "clearly established" law at a high level of generality.).) Jovanovich does not explain, however, what the more specific right at issue would be in this case. Nevertheless, as cited by Judge Johnston, *Brodheim*, *Rhodes*, and *Pratt* foreclose any such notion. *See Brodheim*, 584 F.3d at 1269 (stating that "[P]risoners have a First Amendment right to file prison grievances . . . . Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of "clearly established law.") (internal

citations omitted); *Rhodes*, 408 F.3d at 567 (recognizing that "purely retaliatory actions taken against a prisoner for having exercised [his or her First Amendment rights] necessarily undermine those protections . . . apart from any underlying misconduct they are designed to shield") (internal citations and quotation marks omitted); *Pratt*, 65 F.3d at 806 (stating that "we recently recognized that the prohibition against retaliatory punishment [against an inmate for an exercise of first amendment rights] is "clearly established law" in the Ninth Circuit, for qualified immunity purposes.")  For this reason, Jovanovich's objection is not well-taken.

Jovanovich's second objection, though not entirely clear, seems to argue that Judge Johnston failed in his analysis of the first prong by determining that there was adequate evidence of a constitutional violation. Reviewing de novo, the Court agrees with Judge Johnston in part. In considering qualified immunity, the question is whether "the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right." *Easley*, 890 F.3d at 856. To the extent that Judge Johnston determined that there was a dispute of fact on this issue, the Court clarifies that viewing the evidence in the light most favorable to Stewart demonstrates a constitutional violation. This distinction may be hair-splitting, but the result is the same. Despite Jovanovich's

repeated concerns that only timing supports the inference of retaliation and that Jovanovich demonstrated a legitimate penological reason for Stewart's termination, as already explained, the Court concludes that the evidence presented by Stewart is sufficient and qualified immunity does not apply.[1]

Having reviewed each of Jovanovich's objections concerning Judge Johnston's recommendation to deny Jovanovich's Motion for Summary Judgment, the Court adopts the finding that the disputed facts require resolution at trial. Additionally, no party objected to Judge Johnston's recommendation to deny Stewart's Cross-Motion for summary judgment. Reviewing for clear error, the Court finds that the various factual disputes preclude summary judgment in Stewart's favor as well.

---

[1] On a separate, but related issue, the Court has recently become aware of an unpublished Ninth Circuit decision that may call its previous (Doc. 33) order into question. On May 9, 2017 this Court adopted Judge Johnston's recommendation to dismiss Stewart's First Amendment claim based upon MSP officials placing Stewart on a grievance restriction on May 27, 2015 for using derogatory and abusive language in regards to staff and filing grievances in retaliation against staff. (Doc. 33 adopting Doc. 13 at 22.) To the extent that the May 27, 2015 grievance restriction falls within the scope of the First Amendment, was based on the content of Mr. Stewart's grievances which prison officials found to be abusive, demeaning, and, or, condescending, and was unsupported by any legitimate penological interest, such a restriction is likely contrary to First Amendment protections. *See Richey v. Dahne*, 2018 WL 1940242 (9th Cir. April 25, 2018) (unpublished). However, because this right was not "clearly established" in 2015 when Stewart was placed on the restriction, the Court need not address whether the restriction itself was constitutional. Having concluded that Defendants are entitled to qualified immunity on this claim, the Court will not amend its previous order. (Doc. 33).

## II. Stewart's Request for a Protective Order

Stewart asks the Court to issue a preliminary injunction to secure his legal paperwork from being tampered with and confiscated by prison staff. Judge Johnston recommended this Court deny the motion, firstly, because there was no indication that Jovanovich was involved in the taking of Stewart's legal documents, and more importantly, because Stewart was not able to meet the legal standard required for a preliminary injunction. (Doc. 96 at 1–4.)

Neither party objected, therefore the Court reviews for clear error and finds none. The Court denies the request for a preliminary injunction.

Accordingly, IT IS ORDERED that Judge Johnston's Findings and Recommendations (Doc. 92) is ADOPTED in full. Defendant Jovanovich's Motion for Summary Judgment (Doc. 74) is DENIED, and Plaintiff Stewart's Cross Motion for Summary Judgment (Doc. 87) is DENIED.

IT IS FURTHER ORDERED that Judge Johnston's Findings and Recommendations (Doc. 96) is ADOPTED in full. Stewart's Motion for a Protective Order or a Preliminary Injunction (Doc. 91) is DENIED.

DATED this 4th day of September, 2018.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court